## MORIMURA BROS. *v.* UNITED STATES (No. 1561).[1]

1. BRAID—TAPE.

The language "braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine," in paragraph 358, tariff act of 1913, is not intended to narrow the lexicographic definition of the word "braid." It is comprehensive and sufficiently broad to cover the material which was used in the manufacture of the lamp shades at bar, and which appellants' witness stated may be called a braid or tape.

2. MATERIAL NOT THE TEST OF CLASSIFICATION HERE.

These lamp shades, made in part of braids, are more specifically classified under paragraph 358, tariff act of 1913, as articles made wholly or in part of braids, "of whatever yarns, threads, or filaments composed," than under paragraph 318, as a manufacture in chief value of silk, notwithstanding that silk is their component material of chief value. By the words "of whatever yarns, threads, or filaments composed," in paragraph 358, Congress has excluded the element of component material in determining the dutiability of articles which answer the description of the paragraph.—United States *v.* Snow's United States Sample Express Co. (6 Ct. Cust. Appls., 120; T. D. 35388) distinguished.

## United States Court of Customs Appeals, January 22, 1916.

APPEAL from Board of United States General Appraisers, Abstract 37624. [Affirmed.]

*B. A. Levett* for appellants.

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in this case consists of lamp shades, which were assessed for duty at the rate of 60 per cent under the provisions of paragraph 358 of the act of 1913, and are claimed to be dutiable at the rate of 45 per cent ad valorem as manufactures of silk under paragraph 318 of the same act. The board overruled the protest, and held the lamp shades to be in part of braid and dutiable under the provisions of paragraph 358 providing for "braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for; * * * and articles made wholly or in part of any of the foregoing fabrics or articles; * * * of whatever yarns, threads, or filaments composed."

It is contended that the material which was held to be a braid by the board is not such in fact. There is no evidence of commercial designation. The importers' witness referred to the material as tape, and in answer to the question by the Government's attorney, "That

so-called tape is really a braid, isn't it?" answered, " You can call it a braid or tape."

But it is urged that the sample shows on inspection that it is not a braid, and especially not the kind of braid referred to in paragraph 358. The definition of the word "braid," as given by the Standard Dictionary, is "a narrow, flat tape or woven strip for binding the edges of fabrics or for ornamenting them." In the case of Steinhardt & Bro. v. United States (121 Fed., 442), this definition was cited with apparent approval, but as the term "braid" was there in contest with bindings or tapes, provided for in another paragraph, the article there in question was held to fall within the terms of the latter paragraph.

In Murray's New English Dictionary one definition of braid is: "A woven fabric of silken, woolen, cotton, gold, or silver thread in the form of a band, used for trimming or binding articles of dress."

The material in question in this case answers to the call of these definitions, and we can not agree with counsel for the importers that the language of paragraph 358 is intended to narrow this meaning. On the contrary, the language, "braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine," is comprehensive and sufficiently broad to cover the braid in question.

It is urged by the importers, however, that even if the material of which the imported article is made in part be held to be a braid, yet that the more specific provision for the article in question is paragraph 318, which imposes a tariff of 45 per cent upon all manufactures of silk or of which silk is the component material of chief value not specially provided for. This contention is based upon the holding of this court in United States v. Snow's United States Sample Express Company (6 Ct. Cust. Appls., 120; T. D. 35388), in which the case of Hartranft v. Meyer (135 U. S., 237), was followed, and the rule of the earlier case applied. In the express company case the contest was between "wearing apparel of every description made or manufactured wholly or in part" and "tuckings and articles made in whole or in part thereof," both provisions being appropriate to describe the goods in question. The conclusion was reached that the term "articles made in whole or in part" was a broader term than "wearing apparel made up or manufactured wholly or in part."

It will be noted that neither term depended for the specificness of its description upon the *material* of which it was composed. The present case is quite different. The only ground upon which the article in question could be classified under the silk paragraph is that it is a manufacture of silk, the *material* silk being the controlling term, and silk being of chief value. This might be considered a controlling provision but for the fact that by the terms of paragraph 358

the Congress has seen fit to exclude the element of component material as a factor in determining the dutiability of articles which answer the description of the paragraph. The language which works this result is that following upon the provision for braids and articles made in whole or in part of braids, viz, the provision " all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem." It would have been difficult for Congress to choose language which would more clearly indicate that the material of which a competing article might be composed was not to be deemed controlling in determining the specificity of the respective paragraphs involved. As is well said in the Government's brief, this language is as forceful as it would have been had the various kinds of yarns, threads, or filaments been specially recited. Had it read " all the foregoing, whether composed of silk, or of cotton, or of hemp," it would have been clear beyond possibility of question, but to our minds no more definite than is the language which Congress saw fit to employ.

The decision of the Board of General Appraisers is *affirmed.*