### United States *v.* Macy & Co. (No. 1636).[1]

1. Concession of Law, Effect of.
   - A party's concession as to a matter of law does not conclude the court

2. Evidence—Prima Facie Presumptions.
   The appraiser's report and the collector's assessment are only prima facie correct.

3. Commercial Designation, Effect of.
   The designation of the merchandise by the invoice and the record as "clo-clo braids" is not sufficient to make it braids.

4. Braided—Made of Braids.
   An article having a cover made on it by braiding threads or filaments is not made partly of braids; to be made partly of braids an article must be made in part of an article which has had a separate existence as braid.

5. "Clo-clo Braids," How Dutiable.
   "Lead and cotton clo-clo braids," merchandise consisting of pieces of lead molded upon a flax cord. the whole being covered by tubular cotton braiding, lead being the component material of chief value. are not dutiable as being in part of braids, under paragraph 358, tariff act of 1913: but as being in chief value of lead, under paragraph 167.

---

[1] Reported in T. D. 36256 (30 Treas. Dec., 461).

United States Court of Customs Appeals, March 9, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7792 (T. D. 35798).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General. (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis* (*Thaddeus S. Sharretts* and *Edward P. Sharretts* on the brief) for appellees.

[Oral argument Feb. 15, 1916, by Mr. Baldwin and Mr. Sharretts.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges

BARBER, Judge, delivered the opinion of the court:

The answer to the protest in this case is that the merchandise described on the invoice as "lead and cotton clo-clo braids" consists of dress trimming composed of a cotton braid wound around lead, the cotton braid chief value. It was returned for duty as a manufacture or article in chief value of cotton braid at 60 per cent ad valorem under the last part of paragraph 358, act of 1913.

Duty was assessed in accordance with the above advisory classification. The importers protested, specifying many grounds thereof, but before the Board of General Appraisers and this court rely wholly upon the claim that the merchandise is dutiable under paragraph 167 of the tariff act of 1913 as composed in chief value of lead.

At the hearing of the protest by the board only one witness, who testified for the importers, was called. She said that the official sample attached to the protest represented the importation, that it was composed of lead molded on cord and then covered with cotton; that she was familiar with the uses to which it was applied, which were, she said, in "weighting down" dresses, coats, porticres, draperies, and other articles upon which it was placed in a manner to conceal it from view, and that, so far as she knew, it could not be used for any other purpose. No other use was or is shown or claimed. Upon the request of the importers the sample was sent to a Government analyst to determine the component material of chief value. He reported that lead was such component material, the proportions being lead, 67.79; cotton, 29.60; and hemp, 2.61 per cent. The correctness of this report is not denied.

The Board of General Appraisers sustained the protest. In describing the article it said in its opinion that it came in running lengths; that it had a linear core or center composed of a flax cord, on which were molded at regular intervals of about one-fourth of an inch apart uniformly shaped pieces of lead measuring about one-half of an inch in length, one-fourth of an inch in width, and one-eighth of an inch in thickness; and that the whole article was completely covered with tubular cotton braid.

The board further said:

As has already been stated, the article is composed in chief value of lead, and therefore it is covered by the terms of paragraph 167. But it is also made in part of braid, and hence included within the language of paragraph 358. It has been held, however, that the provisions of paragraph 358 are limited to "articles in chief value of threads, yarns, and filaments." Loewenthal & Co. v. United States (6 Ct. Cust. Appls., 209; T. D. 35464). The article before us is not composed in chief value of "yarns, threads, or filaments," but is composed in chief value of lead, and it follows that it is excluded from paragraph 358.

The Government, appealing, distinctly states that it does not claim the merchandise is directly provided for as braids, but bases its claim for error upon the assumption that the merchandise is an article made in part of braid composed of threads or filaments, contending that, upon this assumption, it is immaterial whether the component material of chief value is threads or filaments, because that limitation is not found in the paragraph.

We quote here so much of paragraph 358 as is applicable:

358. * * * Braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for; * * * and articles made in whole or in part of any of the foregoing fabrics or articles; all of the foregoing of whatever yarns, threads, or filaments composed, sixty per centum ad valorem.

The importers concede in their brief that the official sample is made in part of braid, but contend that nevertheless it is excluded from paragraph 358 upon the ground stated by the board in the quoted part of its opinion.

Before we accept this concession of importers it seems well to review the facts here and the issues involved. The answer to the protest shows the merchandise was invoiced as "clo-clo braids" and that it consists of dress trimmings composed of cotton braid wound around lead. The testimony shows that it is lead molded on a cord and then covered with cotton and that its only known use is to weight down garments, draperies, and other articles. The merchandise itself, as might be expected from the description already given, presents the appearance of lumps about the size of the pieces of lead described by the board connected by a string or cord passing longitudinally through the center of each, both the lumps and the cord being tightly inclosed or covered by a woven or braided covering. That portion of the official exhibit which is between the lumps looks like a cord about three thirty-seconds of an inch in diameter.

There is no proof as to how this so-called "clo-clo braid" is manufactured, except as already stated, nor is there any proof or claim of commercial designation. Assuming the collector's assessment to be in accord with the advisory classification for duty as a manufacture or article in chief value of cotton braid, the prima facie correctness thereof is sufficiently rebutted by the evidence that it is not in chief

value of such braid. The correctness of the appraiser's report is still further successfully assailed in that it is clearly shown that it is neither a trimming nor used as such, because the concealed weighting down use alone can not be said to be a trimming use.

There remains, then, for determination the precise issue as to whether it can be said that the article is composed in part of braid. In order to declare that a thing is made in part of braid, it must appear that braid, as that word is commonly understood, has been brought into existence and is one of the materials used in making the article under examination.

The importers' concession would obviate a consideration of this question, but we are not disposed to accept the same, because it would place this court in the attitude of regarding as a braid something which we do not think has ever attained that status, condition, or entity. This concession may have resulted from the board's finding or may have been made for the purpose of obtaining a decision upon a secondary issue, but in any event evidently was not made for the purpose of inducing a reversal of the board in view of the fact that the position of the importers naturally is that its judgment is correct.

Manifestly the word "braid" may be used in various senses, according to the subject referred to, as braids of hair or straw. As applied to fabrics, the statute suggests that braids may be made in the loom, on a braid, knitting, or lace machine, or by hand.

Lexicographers, we think, substantially all agree when defining "braid" as applied to fabrics made of strands or threads that it is a narrow band or tape and is used for binding, trimming, or ornamenting. See Standard, Century, Webster's, and Murray's (New English) dictionaries, and also Encyclopædia Britannica. It is unnecessary to quote from them all, as the following, taken from the Standard Dictionary, is substantially typical:

A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them.

In Spons's Encyclopædia (vol. 3, p. 1762) it is said, speaking of various fabrics, that—

Small wares, as ordinarily understood, are mainly allied to textiles in the materials of which they are composed, the manner of their fabrication, and their ultimate uses. They may be divided into three great classes: (1) For purposes of attire, (2) for upholstery uses, and (3) in which may be grouped the numerous articles ordinarily denominated fancy goods. The first-named division is probably the most extensive. In this "braids" form a considerable class of themselves. * * * Most of these are made in various widths ($\frac{1}{4}$–2 inches). * * * The texture of plain braids is usually alike on both sides. * * * "Bindings" are a kindred article to braids, but usually of a rather different texture; the two sides are not alike. * * * "Cords" are composed of the same materials as braids, and, as their name indicates, are round instead of flat.

While it may not be clear that judicially the meaning of the word "braid" has been definitely settled, yet it was considered by this court in Morimura Bros. v. United States (6 Ct. Cust. Appls., 475; T. D. 36119), in which the definition from the Standard Dictionary, above referred to, was quoted with approval. See also United States v. Ewing & Clancey (3 Ct. Cust. Appls., 333; T. D. 32624).

The so-called "Featherstitch braid cases"—see United States v. Baruch (223 U. S., 191; 172 Fed., 342; 159 Fed., 294)—while hardly authority for the meaning of the word "braid" in common understanding, are nevertheless consistent therewith in that the merchandise there under consideration consisted of narrow woven strips bearing a featherstitched ornamentation. See also Steinhardt v. United States (121 Fed., 442), where the same Standard Dictionary definition was referred to with apparent approval, although not directly involved.

The fact that the merchandise before us is referred to as a "clo-clo braid" does not, in view of the record, bring that article within the common meaning of the word "braid" as is in effect conceded by the Government, and we are unable to conclude that the entity braid within the common meaning of the term has ever existed or is found in the merchandise under consideration here. The nearest approach thereto is its covering, and this is the basis of the Government's claim as to component material. The appearance of the finished article shows that this covering was braided or woven upon the cord after the lead had been molded thereon. The covering, then, never had the entity of braid; it never had an independent, separate existence as an article or material; it never was designed to be used for trimming, for ornamentation, or for binding; it was never either a flat band or tape, nor was it a tubular tape or braid. Its first appearance was in the completed article before us, and it never had any other existence.

Upon this phase of the question the case of Ulmann v. United States (4 Ct. Cust. Appls., 77; T. D. 33363) is somewhat analogous. There an article termed a "coronation cord" was involved. There was no proof of commercial designation, and it was held that a so-called cord containing elliptical or oval lumps, through the center of which passed the core threads, the whole being covered by threads spun or wound around the same, was not a cord within the common acceptation of the word as contained in paragraph 349 of the tariff act of 1909. Later, however, the same article, upon a different record (see Ulmann v. United States, 5 Ct. Cust. Appls., 357; T. D. 34551) was, by reason of a long-continued, recognized administrative practice to that effect, held to be a cord within the same paragraph. In the case now at bar there is no showing as to the previous administrative practice.

In Burlington Venetian Blind Co. *v.* United States (1 Ct. Cust. Appls., 374; T. D. 31456; also a case of the same title in 3 Ct. Cust. Appls., 378; T. D. 32967), and in United States *v.* Walter (4 Ct. Cust. Appls., 95; T. D. 33271), we considered the meaning of the word "tapes" as contained in paragraph 349 of the act of 1909. It was concluded that the so-called "ladder tapes" involved in those cases, which consisted of two long strips of woven fabric united at regular intervals by means of much lighter short woven strips, the entire articles resembling a ladder, were not tapes in the common meaning of the word. It appeared that the so-called "ladder tapes" were produced by one fabrication, and it was held that in an article so made the entity tape or tapes in the common meaning of the term had never existed, and hence that the so-called "ladder tapes" were not made from any of the materials or goods (tapes) specified in the paragraph.

Now, we think it is clear that the quoted part of paragraph 358 requires that an article to be made in whole or in part of braids thereunder must be made in whole or in part of something which has already attained a status or condition entitling it to be regarded as a braid in and of itself. But neither the covering to the article before us nor any other part of it has ever attained that condition or status; neither has it attained the status or condition in which it could be used, nor is it designed to be used, for any of the purposes to which braids are commonly devoted, namely, for binding, for trimming, or for ornamentation.

We think the record here, considered with the official exhibit, manifestly requires the conclusion that the merchandise is not an article made in whole or in part of a braid within the meaning of the paragraph. It is therefore unnecessary to consider any question argued, because, for the reasons above stated, we are of opinion that the importation was properly classifiable under paragraph 167.

The judgment of the Board of General Appraisers is *affirmed.*