ALFRED KOHLBERG, INC. *v.* UNITED STATES (No. 4246) [1]

---

[1] C. A. D. 111.

United States Court of Customs and Patent Appeals, March 20, 1940

*Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, special attorney, of counsel), for the United States.

[Oral argument December 8, 1939, by Mr. Isenschmid and Mr. Welsh]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain cotton gloves, made in China and imported into the United States at the port of New York, dutiable at 90 per centum ad valorem under the provisions of paragraph 1529(a) of the Tariff Act of 1930, as assessed by the collector, rather than as "outerwear * * * knit or crocheted * * * wholly or in chief value of cotton" under paragraph 917 of that act as claimed by the importer—appellant.

The paragraphs, so far as pertinent, read:

PAR. 1529. (a) Laces, lace fabrics, and lace articles, made by hand, * * * all the foregoing, and fabrics and articles wholly or in part thereof, * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile; 90 per centum ad valorem. * * *

PAR. 917. * * * outerwear, * * * knit or crocheted, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber, and not specially provided for, 45 per centum ad valorem.

On the trial below it was stipulated by counsel for the parties that the involved gloves (samples of which, four in number, were introduced in evidence as Collective Exhibit No. 1) were made "wholly of cotton, directly from thread," and it was conceded by counsel for appellant here that the cuff portion of each of the involved gloves is lace. They were entered as "Four (4) packages Hand made cotton laced gloves."

In addition to the lace cuff, each of the gloves in Collective Exhibit No. 1 has a design on the back of the hand portion. On three of the gloves the design is of diamond shape, and on the other the design consists of three lines running from points near the fingers and converging near the cuff. These designs have a lace-like appearance.

It appears from the record that the involved gloves were crocheted in one continuous process, and that usually gloves of the character of those here involved are made by first crocheting the hand portion, then the fingers, and then the cuff.

It was contended by counsel for appellant on the trial below, and it is contended here, that the provision in paragraph 1529 (a), *supra*, for "Laces, lace fabrics, and lace articles" was intended by the Congress to include only such articles as were composed wholly or substantially wholly of lace; that as the involved gloves are not substantially wholly of lace they are not within the purview of that provision; and that the provision in that paragraph for "fabrics and articles wholly or in part thereof" (meaning fabrics and articles wholly or in part of the articles thereinbefore enumerated) was intended, so far as it has application to the instant case, to include only such fabrics and articles as are composed, at least in part, of lace, which lace had a separate and independent existence prior to the manufacture of such fabrics and articles. Counsel further contend that as the involved gloves were made in one continuous process, the lace therein at no time had a separate and independent existence, and that, therefore, the gloves are not composed wholly or in part of lace within the purview of the provision for "fabrics and articles wholly or in part" of lace.

Counsel for the Government contend that the provision in paragraph 1529 (a), *supra*, for "fabrics and articles wholly or in part thereof," so far as the issues here are concerned, was not intended by the Congress to be limited to such fabrics and articles as were composed either wholly or in part of lace, which lace had a separate and independent existence prior to the manufacture of such fabrics and articles.

Evidence was introduced by counsel for appellant for the purpose of establishing that, although the cuffs of the involved articles are lace, the other portions are not lace; that the designs on the back of the hand portions are not lace designs and do not convert the otherwise "plain crochet mesh of that portion of the gloves" into lace; and that the gloves are not composed wholly or substantially wholly of lace.

Evidence was introduced by the Government for the purpose of establishing that the designs on the back of the hand portions of the gloves are lace designs, and that the involved gloves are composed wholly or substantially wholly of lace.

In its decision, the trial court summed up the evidence introduced by the parties relative to the design on the hand portion of the gloves as follows:

At the trial of this case testimony was offered by both parties, the witnesses called by the plaintiff insisting that the hand portion of these gloves was nothing more than mesh or lace mesh, and that it was not lace, while the defendant's

witnesses insisted that the hand portion was lace. Some of the defendant's witnesses, however, admitted that the plain portion of the hand is lace mesh and that lace mesh is not the same thing as lace; that mesh is only one of the elements in lace, and that an ornamental design must be added to make lace; that lace mesh is something different from lace; that the diamond-shaped design on the back is the only thing that makes the hand lace, and that most of the body of the glove is plain mesh.

The court, however, declined to determine from the evidence whether or not the designs on the hand portions of the gloves were lace designs and whether or not the gloves were composed wholly or substantially wholly of lace.

The trial court in its decision said:

\* \* \* the provision in said paragraph 1529 for "Laces, lace fabrics, and lace articles, \* \* \* and fabrics and articles wholly or in part thereof," should not be construed as requiring that fabrics and articles to be dutiable thereunder must be composed substantially wholly of lace, but that fabrics and articles are comprehended within this provision if a substantial portion thereof is in fact lace. Since it has been conceded herein that a substantial portion of the gloves, to wit, the cuffs, are in fact lace, we hold the same to be properly classifiable as articles, a substantial portion of which is lace, and to be properly dutiable at 90 per centum *ad valorem* under said paragraph 1529. \* \* \*

It will be noticed that the court below did not definitely pass upon the question as to whether or not the involved articles are composed wholly or substantially wholly of lace so as to respond to the term "lace articles." Since it concluded that they were dutiable under the provision "and fabrics and articles wholly or in part thereof" it evidently regarded it as unnecessary to make any finding with reference to the gloves being lace articles. In view of the fact that we are of the opinion that the trial court correctly decided the issue and that the involved gloves are articles in part of lace within the second controverted provision of paragraph 1529 (a), we, as did the trial court, find it unnecessary to pass upon the question as to whether or not, upon the instant record, the gloves should be regarded as "lace articles."

As to whether or not the involved gloves are "articles \* \* \* in part" of lace, under said paragraph, it is urged by the importer that the decision of this court in *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335, and the authorities cited therein, are controlling, and its counsel quotes from said case as follows:

\* \* \* The reason urged by the appellant is that under a long line of decisions by this court and the United States Customs Court, the language "manufactured wholly or in part of wool felt" must be construed to mean that there must have been felt before the hat bodies were manufactured, and if there was no felt as an independent entity, and the manufacture of the hats or hat forms and the felt proceeded simultaneously, then the bodies and shapes, etc., were not manufactured wholly or in part of wool felt.

\*          \*          \*          \*          \*          \*          \*

It is quite plain, from an examination of the authorities, that the law is as has been urged herein by the appellant. A glance at some of these authorities will be in order.

\*     \*     \*     \*     \*     \*     \*

From these citations it is apparent that from the first session of this court it has been a uniform and well-settled holding that the language "made of" or "manufactured of" presupposes that the material of which the article is made or manufactured exists before the article itself comes into existence.

## On this phase of the case, the trial court said:

From a careful consideration of paragraph 1529 of the Tariff Act of 1930 and paragraph 1430 of the Tariff Act of 1922, we are of the opinion that the Congress has manifested an intention to differentiate between an article wholly or in part of lace and an article composed in any part, however small, of lace. The provision "and articles *composed* in any part, however small, of lace," under the prevailing decisions on the subject hereinbefore referred to, require, first, the creation of the distinct article "lace" and the subsequent use of that distinct article "lace" as such in the manufacture or production of another article in order that the resultant article be an article made or composed in part of lace. If in the manufacture or production of the other article, the distinct article "lace" is destroyed, then that other article is not an article in part of lace, or an article made or composed in part of lace.

Under the involved provision of said paragraph 1529—"articles wholly or in part" of lace—it would seem that the Congress intended to get away from the line of decisions heretofore referred to, holding that, in order for an article to be made or composed in part of lace, that article must be made or composed in part of that which prior to its entry into that article had reached a stage of manufacture entitling it to be regarded as a lace in and of itself, and include therein any article, any part of which is in fact lace, such as the gloves in this case, the cuffs of which are conceded to be in fact lace.

At this point it may be noted that we have found no decision of this court in which a provision involving the word "composed" was held to require the application of the principle of the independent pre-existence of a component material.

We do find, however, that the Board of General Appraisers (now the United States Customs Court) in the year 1925, in the case of *Nicolas Hemance* v. *United States*, T. D. 41273, 48 Treas. Dec. 605, definitely held that fringed Wilton rugs, imported under the Tariff Act of 1922, were not articles "composed" in part of fringe under paragraph 1430 of that act providing for "articles composed \* \* \* of \* \* \* [fringe]" for the reason that the fringe did not have a pre-existence. There was no appeal taken from the judgment in that case.

In paragraph 358 of the tariff act of 1913 appeared the following provisions: "and all other articles or fabrics made wholly or in part of lace" and "and articles made in whole or in part of any of the foregoing fabrics or articles." Now, it will be noticed that Congress not only changed that language and employed the word "composed" in paragraph 1430 of the Tariff Act of 1922, but that when it enacted paragraph 1529 (a) of the Tariff Act of 1930, subsequent to the de-

cision of the Board of General Appraisers in the *Hemance* case, *supra*, it omitted the word "composed" and employed the provision now in controversy "articles * * * in part thereof."

In the *Cohn & Lewis* case, *supra*, this court had before it "wool felt in the form of bodies for hats" which had been made from wool without felt having a preexistence. The provision of the Tariff Act of 1930 there under consideration (paragraph 1115 (a)) was "Bodies * * * for hats * * * manufactured wholly or in part of wool felt." The court held that the language used required a holding that for the article to be manufactured wholly or in part of wool felt it was necessary for there to have been a preexisting felt.

The provision at bar, "articles * * * in part" of lace, both in form and meaning, differs greatly from the ones involved in the *Cohn & Lewis* case, *supra*, or in cases cited therein or in any other decision of this court. Wherever the said principle that there must be a preexisting component material has been applied, the language under consideration in each instance differed greatly from that at bar, and the following briefly stated subject matter will illustrate this point:

"made in whole or in part of any [etc.]" *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256.

"made or cut from cotton pile fabrics." *United States* v. *Dodge*, 13 Ct. Cust. Appls. 222, T. D. 41176.

"manufactures of paper." *Angel & Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 19, T. D. 42132.

"made of blanketing." *Curtis & Von Bernuth Mfg. Co.* v. *United States*, 22 C. C. P. A. (Customs) 651, T. D. 47633.

"articles made therefrom." *Swedish Venetian Blinds Co.* v. *United States*, 24 C. C. P. A. (Customs) 20, T. D. 48291.

"manufactured wholly or in part of wool felt." *Cohn & Lewis* v. *United States*, *supra*.

Each of those terms, we think, definitely suggests a preexistence of the component material there in controversy. In the cases in which those expressions were involved, this court felt compelled by the language used to apply the principle in controversy because it believed there could be no other reasonable construction of the language under consideration. We certainly should not apply that principle in any case where the language of the statute does not expressly compel it.

There is nothing connected with the legislative history of paragraph 1529 of the Tariff Act of 1930 which to our minds is very helpful in determining the reason why Congress in the act of 1930 changed the language used in the predecessor paragraph 1430 of the Tariff Act of 1922 in the respects stated. It is true that in *United States* v. *Macy*, *supra*, Judge Barber, speaking for the court, announced the *preexisting material* rule as applying to the provision "articles made in whole or in part" and employed some language which might be regarded as implying that "composed in part" had the same meaning as "made in part

of," but the term "composed of" was not involved in that case nor in any case to which reference was there made.

Under the circumstances of this case, it is not necessary for us to determine definitely whether Congress, when framing the bill which became the Tariff Act of 1930, was cognizant of the language employed by this court in the *Macy* case and of the holding of the board in the *Hemance* case and "wanted to get away from" or avoid the application of the principle of a preexisting component material in the construction of this phrase. It is our view that Congress never intended that the provision "articles * * * in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a preexisting component material, and the language of the provision, we think, clearly implies that a thing may be a part of the article referred to even though the part was produced in connection with the production of the article itself. Certainly, there is nothing in the language used that even suggests that it should be given the construction which is here contended for by the importer.

Neither the decision in the *Cohn & Lewis* case, *supra*, nor that in any of the authorities cited therein (although several are cited and discussed) support the importer's contention. In the *Cohn & Lewis* case, this court felt compelled to follow a long line of decisions by it, of which Congress must have had knowledge at the time it used the controverted provision "manufactured * * * of felt." The words "manufactured * * * of" necessarily imply or suggest that something that exists is taken and is manufactured into something else. The language at bar has no such connotation. To hold with appellant on this phase of the case would be more than an extension of the principle laid down in the *Cohn & Lewis* case and the other well considered cases which it followed—it would be an unwarranted and unjustifiable application of a principle, which, in our view, should not have and does not have any place whatever in the case at bar.

Appellant argues at some length that we should regard the provision "laces * * * and articles * * * in part thereof" as being synonymous with the provision "laces * * * and articles composed wholly or in part thereof," and that when we give the provision at bar such a meaning the decisions which have heretofore been alluded to are controlling. For reasons previously stated, we do not think the decisions relied upon by the importer support such a conclusion even if we adopt the suggested meaning of the provision. We are of the opinion, however, that regardless of whatever meaning might be given to the word "composed" when used in the suggested phrase, we would be wholly unjustified in so interpreting the provision at bar as to bring about the result contended for by the appellant.

In view of the interpretation which we have herein given **the** controverted provision, it follows that the gloves at bar, which **are** in part of lace, were properly classified under paragraph 1529 (a)**,** *supra*, notwithstanding the fact that the lace portions of the gloves are shown not to have had an existence separate from the gloves themselves.

The trial court arrived at the right conclusion in overruling appellant's protest, and its judgment so doing is *affirmed*.

### DISSENTING OPINION

HATFIELD, Judge: It is well settled that the terms "made of," "manufactures of," "manufactured of," and "composed of" when used in tariff statutes are kindred expressions (*United States* v. *Guy B. Barham*, 26 C. C. P. A. (Customs) 83, T. D. 49614, and cases therein cited), and that any of such terms necessarily implies that the material of which an article is manufactured, made, or composed had a prior, separate, and independent existence. *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335, and cases therein cited and reviewed.

In the majority opinion it is stated, with reference to the decision of this court in the case of *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256, that:

It is true that in *United States* v. *Macy, supra*, Judge Barber, speaking for the court, announced the *preexisting material* rule as applying to the provision "articles made in whole or in part" and employed some language which might be regarded as implying that "composed in part" had the same meaning as "made in part of," but the term "composed of" was not involved in that case nor in any case to which reference was there made.

The language contained in paragraph 358 of the tariff act of 1913 under consideration in that case read: "and articles made in whole or in part of any of the foregoing fabrics or articles."

In the *Macy* case the court obviously considered the language "made in whole or in part of" to be synonymous with the language "composed in whole or in part of," for, in stating the issue, it said: "There remains, then, for determination the precise issue as to whether it can be said that the article is *composed* in part of braid." (Italics mine.) The court then disposed of that issue in the following language:

In order to declare that a thing is *made* in part of braid, it must appear that braid, as that word is commonly understood, has been brought into existence and is one of the materials used in making the article under examination. [Italics mine.]

The issues presented by this appeal are: Are the involved gloves covered in the first provision in paragraph 1529 (a) for "Laces, lace fabrics, and lace articles," or, if not, are they covered by the second provision contained therein for "all the foregoing, and fabrics and articles wholly or in part thereof?"

The majority of the court has found it unnecessary to decide the first issue owing to the fact that it concludes that the merchandise falls within the second provision.

It is contended by counsel for appellant that the provision for "fabrics and articles wholly or in part" of lace should be construed as though it read "fabrics and articles *composed* wholly or in part" of lace; that the term "composed" or a kindred term, such as "made," although not used by the Congress in that provision, is necessarily implied; and that the provision is not open to any other "grammatical" or "logical" construction.

In support of that contention, counsel call the attention of the court to the fact that the language in the provision here under consideration was in the bill (H. R. 2667, which later became the Tariff Act of 1930) as originally drafted and introduced in the House of Representatives, and it is stated by counsel, which statement cannot be successfully challenged, that in many paragraphs of the Tariff Act of 1930 the Congress used either the language "composed wholly or in chief value" or "made wholly or in chief value" of certain material, and in many other paragraphs of the act the terms "composed" and "made" were omitted in otherwise similar clauses where obviously no difference in meaning was intended. Many paragraphs in the Tariff Act of 1930 are enumerated in the brief of counsel for appellant as illustrative of the point thus made. Paragraphs in which the words "composed" or "made" are used in such clauses are: 339, 342, 346, 359, 373, 385, 397, 1118, 1403, 1404, 1405, 1504, 1506, 1518, 1519, 1526, 1527, 1530, 1532, 1539, and 1543, and paragraphs containing similar clauses from which the words "made" and "composed" have been omitted are: 347, 353, 360, 363, 396, 409, 411, 412, 907, 908, 909, 910, 911, 912, 913, 914, 915, 916, 917, 918, 919, 1505, and many others.

In paragraph 1532 (a) and (b) of the Tariff Act of 1930 the Congress has used the term "made" in one clause, and has omitted it in another otherwise similar clause. In paragraph 1532 (a) provision is made for "Gloves *made* wholly or in chief value of leather" at various rates of duty, according to lengths, etc. [italics mine]; whereas, paragraph 1532 (b) contains the provision for "Gloves wholly or in chief value of leather made from horsehides or cowhides." Clearly the Congress intended each of those provisions to cover only such gloves as were "made," "composed," or "manufactured" wholly or in chief value of leather.

What, then, is the basis for holding that in providing in paragraph 1529 (a) for "Laces, lace fabrics, and lace articles," and for "all the foregoing, and fabrics and articles *wholly or in part thereof,*" that is, wholly or in part of laces, lace fabrics, or lace articles, the Congress did not intend that the articles and fabrics covered by the second

provision should be *composed or made* wholly or in part of the "Laces, lace fabrics, and lace articles" provided for in the first provision? [Italics mine.]

The answer by the majority of the court, as I understand it, is that the principle announced and applied in the cases cited in its opinion should not be given application "where the language of the statute does not expressly compel it," and that the Congress never intended that it should be applied to the involved provisions in paragraph 1529 (a), *supra*.

I find no other argument or reasoning in the majority opinion in support of the conclusion reached therein.

In view of what I have hereinbefore stated, it would seem to be clear that the second provision of the statute here under consideration should be construed as though it read "all the foregoing [laces, lace fabrics, and lace articles], and fabrics and articles [composed or made] wholly or in part thereof," and that, when it is so construed, the fabrics and articles provided for therein must be composed or made wholly or in part of laces, or lace fabrics, or lace articles, which had a prior, separate, and independent existence.

There is another reason, however, which, it seems to me, supports the construction I have placed upon the provisions in question. The Congress certainly intended that the second provision in paragraph 1529 (a) should relate back to the first provision which includes, in addition to laces, lace fabrics and lace articles. Obviously, a fabric or article could not be classified under the second provision as being wholly or in part of a *lace fabric* or a *lace article*, unless such lace fabric or lace article had a prior, separate, and independent existence. The Congress, of course, was aware of that fact, and could not have intended that the second provision should have one meaning when construed in connection with the terms "lace fabrics" and "lace articles" and an entirely different meaning when construed in connection with the term "laces."

Owing to the fact that the involved articles were not made wholly or in part of lace which had a separate and independent existence prior to the manufacture of such articles, I am of opinion that they are not properly dutiable under the second provision of paragraph 1529 (a), *supra*.

The involved articles, of course, are neither laces nor lace fabrics, and, therefore, if they are properly classifiable under the first provision it must be because they come within the term "lace articles" provided for therein. In view of the fact that the term "lace articles" in the first part of the paragraph in question is associated with the terms "Laces" and "lace fabrics," each of which terms obviously was intended by the Congress to cover only such articles as are composed wholly or substantially wholly of lace, and in view of the further fact that paragraph 1529 (a), *supra*, also contains a provision for "fabrics

and articles wholly or in part" of lace, I think it was the evident purpose of the Congress to include within the provision for "lace articles" contained in the first part of the paragraph only such articles as are composed wholly or substantially wholly of lace, and that unless the involved articles are composed wholly or substantially wholly of lace they were not intended by the Congress to be covered by that provision. See *United States* v. *Guy B. Barham Co.*, *supra*, and cases therein cited.

Although considerable evidence was introduced by the parties upon that phase of the case, the trial court declined to make a finding as to whether the involved articles are composed wholly or substantially wholly of lace. Accordingly, I am of opinion that the judgment should be reversed, and the cause remanded to the trial court for a finding on that issue.

I am authorized to say that Presiding Judge Garrett concurs in these views.