HERRMANN & JACOBS, INC. *v.* UNITED STATES (No. 4362)[1]

---

[1] C. A. D. 203.

United States Court of Customs and Patent Appeals, March 30, 1942

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney, of counsel), for the United States.

[Oral argument December 3, 1941, by Mr. John D. Rode and Mr. Rao]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, overruling the protest of the importer whereby it brought suit to recover a portion of the duties assessed and collected by the Collector of Customs at the port of New York upon an importation of towels, commonly referred to as bath towels, which are hereinafter more particularly described.

The collector classified the merchandise under that part of paragraph 909 of the Tariff Act of 1930, which reads:

PAR. 909. Pile fabrics  *  *  *  cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton, and all articles, finished or unfinished, made or cut from such pile fabrics, all the foregoing,  *  *  *  if terry-woven, 40 per centum ad valorem.

The collector also assessed an additional duty of 10 per centum ad valorem under paragraph 924 of the act and this assessment is not in dispute.  Paragraph 924, therefore, need not be quoted.

The importer's claim is for classification and duty assessment under that part of paragraph 911 (a) of the act, which reads:

PAR. 911. (a)  *  *  *  towels, other than pile fabrics, 25 per centum ad valorem  *  *  *.

The trial court expressly held that the collector's classification under paragraph 909, *supra*, was erroneous, but held the merchandise classifiable under paragraph 923 of the act (under which no claim had been made in the protest) and hence overruled the protest "without affirming the collector's action."

Paragraph 923 reads:

PAR. 923. All manufactures, wholly or in chief value of cotton, not specially provided for, 40 per centum ad valorem.

The Government does not contend before us for classification under paragraph 909, *supra*, but insists upon affirmance of the judgment below.

It is proper to say that in the collector's report transmitting the papers in the case to the Customs Court, reference was made to the

decision of that court rendered subsequent to the collector's classification of the instant merchandise (and not appealed) in the case of *Ramallah Trading Co.* v. *United States*, T. D. 47681, 67 Treas. Dec. 748, and it was said:

Following T. D. 47681 and in view of the description of the appraiser in his special report herewith, namely "articles of pile fabrics whose identity was established in the loom and therefore were not made or cut from pile fabrics," the merchandise would now be classified as "manufactures wholly or in chief value of cotton, nspf" at 40% under par. 923, plus 10¢ per pound on the net weight of cotton having a staple of 1⅛'' or over under paragraph 924.

Since this rate and paragraph is not claimed in the protest, we are without authority to reliquidate the entry in order to classify the merchandise as described above.

It is also proper to say, at this point, that paragraph 911 (a), *supra*, was not involved in the *Ramallah Trading Co.* case, *supra*, and as we understand appellant's position it relies upon that case (our decision in *Curtis & Von Bernuth Mfg. Co.* v. *United States*, 22 C. C. P. A. (Customs) 651, T. D. 47633 being also cited) to support its contention that the involved merchandise is outside the scope of paragraph 909, *supra*. The merchandise involved in the *Ramallah Trading Co.* case, *supra*, consisted of certain cotton table runners or scarfs of pile construction, and the only issue presented there was whether the merchandise was properly classifiable under paragraph 909, *supra*, or paragraph 923, *supra*, the court holding the latter to be applicable.

Evidence was presented in the instant case, including samples agreed to be illustrative of the merchandise, and the following stipulation was entered into:

Mr. RODE. I offer to stipulate with Government counsel that the merchandise involved in this case and described on the invoice as bath towels or towels, assessed with duty at 40 per cent under paragraph 909, with or without an assessment under paragraph 924, consists of terry woven towels in chief value of cotton, not made or cut from pile fabrics.

Mr. WEIL. The Government so stipulates.

Mr. RODE. Importers further stipulate that terry woven cloth is a pile fabric.

\* \* \* \* \* \* \*

Judge KINCHELOE. Does the Government stipulate that?

Mr. WEIL. Yes; we agree to that.

We may say that it is not altogether clear from the evidence whether, as imported, the merchandise had been cut to the form of individual towels, or whether they were imported woven in the piece with indicia formed in the weaving to show the points at which separation might be made to form individual towels. From statements as to size made on the invoice, we deduce that they probably were in the form of individual towels, but that is not material to a decision of the issue involved.

From the evidence in the case, including the exhibits, and the stipulation agreed to, it is established: (1) that the towels are in chief

value of cotton; (2) that they were terry-woven in the piece, their identity being fixed on the loom in the process of weaving; and (3) that terry-woven cloth is a pile fabric. The stipulation states, however' that they were "not made or cut from pile fabrics," which statement apparently conforms with that of the appraiser in describing the merchandise.

It is contended by appellant, in effect, that the towels are articles as distinguished from fabrics or cloth; that they are finished articles which have lost their character and identity as fabrics, and become something more than pile fabrics, and that Congress "was well aware of the distinction between fabrics and cloth on the one hand, and articles finished or unfinished on the other hand," and definitely recognized the distinction in various paragraphs of the Tariff Act of 1930, not alone in the cotton manufactures schedule (schedule 9), but in other textile schedules of the act.

In the course of its decision, the trial court said:

* * * paragraph [911 (a)] does not provide for towels made or cut from terry-woven pile fabrics, but for "towels, other than pile fabrics." So far as we can see this language is only open to two possible constructions. The first, as if the provision read "towels, other than those made from pile fabrics," and the other as if reading "towels, other than those of pile weave construction." Plaintiff in its brief contends for the former interpretation, which of course would result in holding the involved merchandise dutiable under said paragraph 911 (a), as claimed.

We think the second construction, however, is the more reasonable, plausible, and within the real intent of Congress.

  *   *   *   *   *   *   *

* * * we are of opinion that the provision for "towels, other than pile fabrics," in said paragraph *909* [911 (a)] does not compel such a narrow construction to be placed thereon as to exclude therefrom only such towels as have been made or cut from pile fabrics, and certainly there is no evidence to indicate that Congress so intended. Nor does there seem to be any possible reason for Congress discriminating between pile fabric towels made as completed articles on the loom and those made or cut from pile fabrics in the piece. * * *

In the brief for appellant before us it is said, *inter alia:*

* * * the trial court *sua sponte* assumes that appellant is contending that paragraph 911 (a) should be construed as though it read "towels, other than those of pile weave construction", whereas in fact appellant contends that paragraph 911 (a) should be construed exactly as written.

We do not understand the trial court to have assumed that appellant was contending for the construction so stated. On the contrary, the quoted language from the court's decision stated quite specifically that "in its brief" appellant contended that the clause should be interpreted as if it read "towels, other than those made from pile fabrics," which interpretation the court declined to accept. The brief on behalf of appellant presented before the trial court is not before us, and we are not advised as to the line of argument made there

but, whatever may have been its position there, its contention before us is that nothing should be read into the provision; that the "language * * * is plain and unambiguous on its face"; that "the intent must be obtained from the language used," and that "there is no occasion for construction."

It long has been settled by many judicial decisions, construing various tariff acts, that the term "fabrics" ordinarily means cloth, or material, not further manufactured (see for example the case of *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693), and that articles composed of such cloth, or material, are distinguished, for tariff purposes, from the cloth, or material itself. In the *Ramallah Trading Co.* case, *supra*, the trial court, citing numerous authorities, applied that rule, and finding that the merchandise there involved comprised articles, which, although of pile construction, were not pile fabrics and not made or cut from pile fabrics (because their identity as individual articles had been fixed on the loom in the process of weaving them), denied their classification under paragraph 909, *supra*, which it will be observed is a pile fabrics and pile article paragraph.

It is the contention of appellant, as we understand it, that the word "fabrics" as used in the controverted clause must be given the same meaning as that given it in various judicial decisions where it has been involved in the construction of textile paragraphs of various tariff acts, and recognized and adopted by Congress, and, hence, that in paragraph 911 (a) the term "pile fabrics" means pile material as distinguished from pile articles. Therefore, it is insisted that the towels at issue, although structurally pile in character, are not pile fabrics but are articles in a tariff sense.

The Government contends that the phrase "other than pile fabrics" requires the exclusion of the towels at issue from paragraph 911(a). It is argued, in effect, that the words "pile fabrics" as used in that paragraph, should be given a meaning different from that given them by the trial court in the *Ramallah Trading Co.* case, *supra*, in construing paragraph 909, *supra*. In the final analysis, the purport of this argument is that the word "fabrics," as used in paragraph 911(a), should not be given the meaning of "material," but that for the purposes of that paragraph it should be construed to mean articles as well.

In the brief on behalf of the Government it is said:

Congress is presumed not to have performed a vain act, and it would seem that the only reasonable interpretation of the provision "towels, other than pile fabrics" in paragraph 911(a) is that it was intended to provide for towels made without a pile, such as plain, huck, or crash, towels.

In support of its position, the Government contends for "a consideration of statutes *in pari materia*," and recites certain "tariff

history" claimed to be applicable in the construction of paragraph 911 (a), *supra*.

We are of the opinion that the trial court arrived at the right conclusion. Under a long line of decisions by this court, the phrase "made or cut from such pile fabrics," and phrases of the same import, have been so construed as to require the thing from which the article is made or cut to have a preexistence before the making or the cutting takes place. This line of holdings began with this court as early as *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256, and was followed in *United States* v. *Dodge*, 13 Ct. Cust. Appls. 222, T. D. 41176; *Angel & Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 19, T. D. 42132; *Curtis & Von Bernuth Mfg. Co.* v. *United States*, 22 C. C. P. A. (Customs) 651, T. D. 47633; *Swedish Venetian Blinds Co.* v. *United States*, 24 C. C. P. A. (Customs) 20, T. D. 48291; and *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D 49335.

Congress, under the circumstances, must be presumed to have known of the uniform interpretation which the courts had placed upon language identical with or similar to that here involved, and in some instances has amended certain paragraphs in the tariff acts of 1922 and 1930 so as to conform to its ideas as to what the proper classification should be. See the "made of blanketing" amendment in paragraph 1111, Tariff Act of 1930, amending paragraph 1111 of the Tariff Act of 1922; also section 34 (b) of the Customs Administrative Act of 1938 amending paragraph 1115 (b), Tariff Act of 1930, relating to hat bodies, manufactured wholly or in part of wool felt.

In view of the meaning we are therefore required to give to the phrase "made or cut from such pile fabrics" in paragraph 909, it must be held that the classification of the collector was erroneous (this was the view of the trial court), and that the instant merchandise cannot be properly classified under said paragraph.

This brings us to a consideration of the sole claim by the importer in this case that the merchandise should have been assessed under that portion of paragraph 911 (a) as "*  *  *  towels, other than pile fabrics, 25 per centum ad valorem  *  *  *." As before stated, the importer contends that the instant goods are towels, and that they are other than pile fabrics because the term "fabrics" does not cover an article made of fabric.

While it is true that it has frequently been held, for good and sufficient reasons, that in various paragraphs of tariff acts the term "fabric" could not be applied to an article made of fabric, and that Congress, when it spoke of fabrics generally, had reference to a fabricated article in the piece and not a finished article, we cannot concur in the contentions of appellant as to the meaning of the phrase in

said paragraph 911 (a) "* * * towels, other than pile fabrics
* * *." In our view, this interpretation would completely ignore
the phrase "other than pile fabrics" and it is the duty of courts in con-
struing statutory language to refrain from attributing to the legisla-
tive body a vain and purposeless thing, and the language used should
be given some meaning if it is at all possible.

We think that Congress by the provision "* * * towels, other
than pile fabrics * * *," meant nothing more than to say it was
including towels which were not of pile fabric construction. We
read the language as if it read "towels, other than pile fabric towels."
The term itself "towels, other than pile fabrics" names towels as fab-
rics. By the use of the term "other than pile fabrics," Congress
intended to exclude all towels of pile make, such as those at bar,
from the paragraph.

Appellant urges that we must apply the language "other than pile
fabrics" exactly as it is written, and that Congress well knew the
difference in meaning between fabrics and articles made from fabrics.
The importer's interpretation of the term "other than pile fabrics"
is that Congress meant after providing for towels to exclude under
that term things which were not towels but which were pile fabrics.
It seems to us that the argument defeats itself. This line of reason-
ing leads to an absurdity. If Congress knew that fabrics, although
towel material, would not come under the term "towels," it did a vain
thing in adding the phrase "other than pile fabrics." It might be
added that Congress knew that pile fabrics were specially provided
for in paragraph 909, and that it would be unnecessary to use the
term "other than pile fabrics" to avoid their being classified under
paragraph 911 (a).

It may be that our interpretation of paragraph 911 (a) adopts a
meaning for the term "fabrics" out of line with most holdings on some-
what similar questions of construction. We know of no similar stat-
utory phrase which has ever been construed by any court, and under
the circumstances we feel fully justified in so construing the phrase
as to give it a sensible meaning and thus avoid an anomalous result.

It may be urged that Congress overlooked the fact that it had not
used language in paragraph 909 which would cover the instant mer-
chandise, and, believing that merchandise like that at bar, of pile
fabric construction, had been taken care of there, intended to include
in paragraph 911 (a) all other cotton towels not provided for in
paragraph 909, and that it failed for this reason to use language in
paragraph 911 (a) that would exclude the instant merchandise.

It will not do to say that because it did not include the instant
merchandise in paragraph 909, it intended to include it at a lower rate
of duty in paragraph 911 (a). The admission that Congress may have

thought that it included towels like those at bar, which are of pile fabric construction, under paragraph 909, is likewise an admission that it did not intend to include them in paragraph 911 (a) at a 25 per centum ad valorem duty.

Under the above construction, it may be suggested that the foregoing reasoning should call for a conclusion that the instant merchandise was intended by Congress to be classifiable under paragraph 909. It is well settled that if Congress uses language which may be construed to bring about a nonanomalous result and one which would seem to more aptly respond to what the Congressional intent was, then it is the duty of the court to so construe such language. But, if Congress has failed to use any language which may be so construed or if it uses such terms as preclude such a construction, then the court cannot supply by its decision the omission of necessary legislation which would have effected its apparent intent.

In reaching a conclusion as to the meaning of the said controverted phrases in paragraphs 909 and 911 (a), we are much in the same position as was the Supreme Court of the United States in *United States* v. *Stone & Downer Co.*, 274 U. S. 225, 244, where it said:

If the language of the statute is such that such results can not be avoided, of course it must be enforced accordingly. If Congress by its language, has made a mistake, and so has failed in its purpose, this Court can not supply by its decision the omission of a necessary legislative provision to effect its purpose. With the intent of the Act clearly in mind, however, we must see whether it is true that the language used can only bear the construction insisted upon by the importers and upheld by the Court of Customs Appeals, or whether there is a broader and more reasonable construction that can be fairly placed upon the statute which will serve the plain Congressional purpose.

In *United States* v. *Fisher*, 2 Cranch 358, 385, Chief Justice Marshall speaking for the Supreme Court of the United States, said:

* * * It is undoubtedly a well-established principle in the exposition of statutes, that every part is to be considered, and the intention of the legislature to be extracted from the whole. It is also true, that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain; in which case it must be obeyed. * * *

We have examined the legislative history quoted by the Government and find nothing in it particularly helpful in deciding the instant issue.

For the reasons hereinbefore stated, we must hold that the involved merchandise is not classifiable under either paragraph 909 or paragraph 911 (a). Clearly it is described and provided for under the catch-all cotton provision, paragraph 923, and we note that it is there dutiable at the rate of 40 per centum ad valorem which is the same rate that is provided for in paragraph 909 for articles of the kind therein provided for, if terry-woven.

Ordinarily, under circumstances like those at bar, having held that the merchandise is not dutiable at 25 per centum ad valorem under

paragraph 911 (a), it would not be necessary for us to pass upon the question as to which of the two paragraphs, 909 or 923, the merchandise was dutiable under, for the reason that each paragraph provides the same rate of duty on the cotton goods falling therein. The reasons for bringing us to our conclusion that the merchandise is not dutiable under paragraph 911 (a) necessarily embrace a consideration of the question as to whether or not Congress intended to include it under paragraph 909, and for that reason we feel justified in holding, as we have hereinbefore, that the merchandise is not dutiable under paragraph 909.

From the foregoing, it follows that the trial court arrived at the right conclusion and that its construction of paragraph 911 (a) was correct. Its judgment should be, and it is, *affirmed*.

### DISSENTING OPINION

GARRETT, P. J., and LENROOT, J., dissenting.

As we understand the majority opinion, it is held that the phrase "*  *  *  towels, other than pile fabrics,  *  *  *" should be treated as if it read "towels, other than pile fabric towels." This, we take it, is the equivalent, in a legal sense, of the holding of the trial court that the phrase should be treated "as if reading 'towels, other than those of pile weave construction.' "

This reads into paragraph 911 (a) of the Tariff Act of 1930 language not inserted therein by the Congress. The reason assigned for interpolating such language is, in substance, that by so doing an anomalous situation will be avoided.

The majority opinion states:

It long has been settled by many judicial decisions, construing various tariff acts, that the term "fabrics" ordinarily means cloth, or material, not further manufactured  *  *  *, and that articles composed of such cloth, or material, are distinguished, for tariff purposes, from the cloth, or material itself.

This rule is one of such long standing and is so well known that we deem it unnecessary to cite the cases in which it has been applied. We have been unable to find any case in which an exception to it has been made. Not only have the courts sustained and applied it, but the Congress itself has recognized it—indeed, the Congress originated it—and has applied it (uniformly so far as we can determine) in different tariff acts extending over a long period. It is clearly recognized in various of the paragraphs included in the different textile schedules of the Tariff Act of 1930.

It is clear that if the term "fabrics," as it appears in paragraph 911 (a) be given the meaning so long given it by the Congress and the courts as it has appeared in other tariff acts and in other paragraphs of the present act, the contention of the importer here must be sustained. We think the majority opinion virtually concedes this

and that it is agreed that it cannot be held otherwise except by reading language into the paragraph.

While courts may, by interpretation, sometimes read language into a statute in order to carry out the legislative intent, this may be done only where such legislative intent clearly appears.

As stated in Lewis' Sutherland Statutory Construction, second edition, vol. II, section 382:

* * * But the practice of reading words into a statute is one to be exercised with caution, and should only be indulged when the omission is palpable and the omitted word clearly indicated by the context. * * *

In the case at bar, while it is possible that Congress had the intent ascribed to it in the majority opinion in the enactment of paragraph 911 (a), it is equally possible that Congress merely intended to exclude from such paragraph towels made or cut from pile fabrics which are provided for in paragraph 909.

Indeed, the latter possible construction would seem to be the more reasonable, for in the cotton towel provision of the Tariff Act of 1922 in paragraph 912 terry-woven towels such as those here involved were expressly excluded from its provisions. This exclusion is not contained in paragraph 911 (a) here under consideration, and it is elementary that ordinarily a change of language in a legislative act signifies a change in intent.

At any rate, it seems clear to us that where there are two reasonable theories of congressional intent, this court is not at liberty to adopt one of them, based wholly upon speculation.

Therefore, it seems to us that the construction given by the majority is in the nature of "judicial legislation," and we are unable to agree to its propriety. We fear that it establishes a precedent that may arise, in many instances, to plague those charged with the duty of administering the customs laws, and the courts as well.

It was suggested during the argument of the case that the phraseology used by Congress may have been used inadvertently. That it seems to us can only rest upon surmise, but even if such was the case, and even if an anomalous situation has resulted, the remedy for it lies with the legislative branch of the Government. We, therefore, respectfully dissent.