(C. D. 146)

C. I. Penn *v.* United States

United States Customs Court, Second Division

(Decided April 13, 1939)

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for the plaintiff.
*Joseph R. Jackson,* Assistant Attorney General (*Webster J. Oliver,* and *Richard E. FitzGibbon,* special attorneys, *Frank X. O'Donnell, Jr.,* junior attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: The merchandise here in controversy consists of cocoa fiber pile mats imported at the port of New York under the Tariff Act of 1930. Duty was assessed thereon by the collector at the rate of 12 cents per square foot under the provision of paragraph 1022 of said act for "pile mats and floor coverings, wholly or in chief value of cocoa fiber," and the proclamation of the President of the United States reported in T. D. 46047.

Plaintiff claims the merchandise to be made in part of braid, and that it is therefore dutiable at 90 per centum ad valorem under that portion of paragraph 1529 (a) reading:

* * * braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace. knitting, or braiding machine; and fabrics and articles embroidered (whether or not the embroidery is on a scalloped edge), tamboured, appliqued, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraphs 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. * * *

The contention of the Government in this case is (1) that the pile mats in question are not composed in part of true braid; (2) that the alleged binding around the edges of the mats was not made on a braiding machine; (3) that the mats, together with the so-called braided binding, are not composed wholly or in chief value of filaments, yarns, or threads, as those terms have been defined by the courts; and (4) that cocoa fiber mats similar in all material respects to the merchandise at bar have been imported into this country and have been specifically provided for since the Tariff Act of 1909, and that under the doctrine of long-continued Departmental practice the imported merchandise is properly dutiable under said cocoa fiber mat paragraph 1022 of the act of 1930, and not under the provision for articles in part of braid in said paragraph 1529 (a).

Plaintiff has put in evidence as Exhibits 2 to 8, inclusive, representative samples of the merchandise in question designated on the invoices as qualities CL, CK, CB, CLB, BLB, LB, SCL, MB, SMB, Inlaid, MB Inlaid, and quality Granite 19. An inspection of said exhibits shows all the mats to have a pile surface with a binding of braided material around the edges for the purpose of protecting or holding the mats together in use. This braided material is shown to

be made of coir yarn, which means yarn made of cocoa or cocoanut fiber.

According to the deposition taken abroad by commission of H. Smith, manager of the Alleppey Branch of Aspinwall & Co., Ltd., the manufacturers of the imported merchandise in India, the coir mats above designated were woven on hand looms, and were all strengthened around the edges with braid made of coir yarn, except quality LC Super, which was not made in any part of braid. It further appears that said braid portion of the mats was made separately from the body of the mats on a power-driven machine, except the braid on quality Granite 19, which was made by hand. In answer to interrogatory 6 deponent Smith describes the machine on which the braid was made as follows:

> Braid made by machine is made on a power-driven braiding machine. The method of operation is that the upright spindles in the attached photograph, marked Exhibit A, are furnished with previously wound bobbins of coir yarn. These spindles are fitted in slots into revolving plates, the motion of which moves the spindles in an entwining action. The yarn is drawn from the spools by passing the ends through corrugated rollers which are turned by gear wheels connected with the main mechanism of the machine. This photograph is one of a machine working in a factory under my management.

The common meaning or understanding of the term "braid" is given in the New Standard Dictionary, 1930 edition, as follows:

> *Braid* n. 1. A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them. 2. anything braided, plaited, or interwoven, as fillet, or plaited hair.

That the said binding around the edges of the mats is braid within the above dictionary definition of the term we think is quite apparent from an inspection of said Exhibits 2 to 8. The Government has nevertheless introduced evidence of several witnesses in the braid business and in the manufacture of carpets and rugs, who gave it as their opinion that the binding was not braid, but only braided material; that they knew of no other braid manufacturer who makes or sells as braid any article similar to such binding; that the binding did not seem to be a true form of braid; and that they had never seen coir yarn made into braid.

It may be very true that in the particular line of business or manufacture in which such witnesses are engaged coir yarn braid is not used or known by them. That is not sufficient or competent, however, to prove that other manufacturers, especially cocoa fiber mat manufacturers, do not use same, or that such braid is not within the commercial meaning of that term. That coir and coir yarn are recognized articles of commerce is evidenced by the fact that Congress has, in paragraph 1656 of the Tariff Act of 1930, in the free list, provided

for coir and coir yarn, and has also so provided in prior tariff acts back to 1883.

On the question of whether or not the braid binding was made on a braiding machine, we hardly think that the testimony of the Government's witness Barrett that the machine on which these mats are manufactured is nothing like what is known in the textile trade as a textile loom, and that the ordinary textile fibers could not be woven on such a machine, is sufficient to prove that the said binding was not woven on some sort of a braiding machine as testified to and described by plaintiff's witness Smith in his deposition. That coir braid such as that forming the binding around the edges of the mats is made on a braiding machine would seem to be confirmed by the Government's witness, Albert Henry Allen, who has been connected with the cocoa fiber industry for forty-five years, and has manufactured and developed machinery for that purpose. We quote from his testimony on cross-examination, as follows:

X Q. Referring to Exhibit 8, does your factory produce a braid of that type. in connection with these mats?—A. Yes, sir.

X Q. Upon what kind of a mechanism do you produce it?—A. A braiding machine.

X Q. Power machine?—A. Power machine.

X Q. Take this braid which has been stripped apart on Exhibit 8. Can you tell me how many ply are in that, please? How many ply are there in each one of those strands?—A. This is made on a five ply machine; five spindles on the machine and each spindle carries a thread.

X Q. Made out of coir yarn?—A. Made out of coir yarn, yes.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

X Q. Each one of those yarns comprising that braid is made out of cocoa fibre?—A. Made of cocoa fibre.

X Q. That is called coir yarn?—A. Coir yarn, yes.

X Q. That is a very familiar term in the trade?—A. It certainly is, all trades. (R. 78/9).

On the third point raised by the defendant that it has not been established that the mats and their binding are composed of the filaments, yarns, or threads specified in said paragraph 1529 (a), reference is made to the case of *United States* v. *Borgfeldt & Co.,* 14 Ct. Cust. Appls. 240, T. D. 41873, wherein the court, in construing the language "filaments, yarns, and threads," in paragraph 1430 of the Tariff Act of 1922, which is the predecessor of paragraph 1529 (a) of the present act of 1930, held same to mean such materials as are generally known as materials for knitting, weaving, or sewing.

In view of the testimony and exhibits herein we fail to see any merit in this contention. The braid around the edges of the mats is, we think, clearly shown to be made of yarn, even by defendant's own witnesses, and the mats taken as a whole seem to be made entirely of a combination of coir yarns, filaments, or threads. And so far as being made of materials generally known as materials for

knitting, weaving, or sewing is concerned, in our opinion the testimony amply shows that the coir yarns and fibers are used for weaving purposes, at least in the manufacture of coir fiber mats. This is really confirmed by the testimony of defendant's own witness Barrett when questioned by Judge Dallinger, as follows:

Judge DALLINGER. What, in your experience, has coir yarn been used for?

The WITNESS. The only purpose I have seen it used for was for the purpose of tying on mats.

Judge DALLINGER. Is it woven on a textile machine?

The WITNESS. It is woven on a special machine, and that machine is entirely different from anything that is commonly known to me as a textile loom.   *   *   * (R. 54).

There is some conflict in the testimony as to whether the braid binding on the mats is for ornamental purposes, or for utilitarian purposes. This, however, would be immaterial to bring the merchandise within the operation of said paragraph 1529 (a), if the braids otherwise are actually made on a braiding machine or by hand. Note G. A. 7941, T. D. 36584.

Now, as to the doctrine of long-continued Departmental practice which the defendant seeks to invoke in support of the collector's classification of the merchandise as cocoa fiber pile mats under said paragraph 1022 of said act of 1930, it appears that Congress provided for "mats made of cocoa fiber" in the three prior Tariff Acts of 1922, 1913, and 1909, respectively, while the provision in paragraph 1022 of the present act is for "pile mats and floor coverings, wholly or in chief value of cocoa fiber." Furthermore the competing provision for articles in part of braid, etc., appeared only for the first time in paragraph 1430 of the Tariff Act of 1922, and was reenacted in substantially the same language in said paragraph 1529 (a) in the act of 1930. Under the circumstances it is quite apparent that the doctrine of long-continued Departmental or administrative practice can have little application in the present instance.

Defendant argues further that the imported merchandise is *eo nomine* and specifically provided for in paragraph 1022 of the act of 1930 as pile mats and floor coverings, wholly or in chief value of cocoa fiber; that said Presidential proclamation has reference to the same identical merchandise; and that, therefore, if plaintiff's contention in this case were upheld, it would render nugatory said provisions of law.

We entirely agree with counsel for the Government that the said provisions very specifically and definitely cover the merchandise under consideration, and, in the absence of any more specific provision, would control the classification of the mats. Our appellate court, however, in the case of *Madame Adele* v. *United States*, 23 C. C. P. A. 305, T. D. 48176, held that the language in paragraph 1529 (a) of said act of 1930 reading "by whatever name known, and to whatever use

applied, and whether or not named, described, or provided for elsewhere in this act" invades and supersedes every other paragraph of said tariff act, except those expressly excepted in said paragraph 1529 (a) itself. This would of course also apply to the provision for braid, and articles in part of braid, etc., in the same paragraph, which provision is affected by the same language. Therefore, so far as cocoa fiber pile mats in part of braid are concerned, said paragraph 1529 (a) must be taken as more specific than said paragraph 1022 for dutiable purposes. This does not, however, nullify said provisions of paragraph 1022 and said Presidential proclamation, as claimed by defendant, for they would still apply to cocoa fiber pile mats not made in part of braid.

On the facts and the law herein we think it is fairly established that the cocoa fiber pile mats in question are made in part of braid made on a braiding machine or by hand; that said braid was separately woven from the body of the mats, and that the mats and braid binding together are composed wholly or in chief value of yarns, filaments, or threads generally used for weaving purposes.

The claim of the plaintiff under said paragraph 1529 (a) is therefore sustained as to the mats designated on the invoices as qualities CL, CK, CB, CLB, BLB, LB, SCL, Granite #19, MB, SMB, Inlaid, and MB Inlaid, but is overruled as to all other merchandise and as to all other claims. Note Abstracts 21322 and 21344; also *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256.

Judgment will be rendered accordingly.