(C. D. 825)

Borab Bros. *v.* United States

United States Customs Court, Second Division

(Decided January 19, 1944)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph A. Howard, Jr.*, and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; TILSON, J., dissenting

LAWRENCE, Judge: Plaintiff imported ladies' handbags and belts from China. The handbags were classified by the collector of customs as manufactures in chief value of rayon, as provided for in paragraph 1312, and the belts were classified as wearing apparel in chief value of rayon, pursuant to the provisions of paragraph 1311, of the Tariff Act of 1930. Duty was levied in each instance at the rate of 45 cents per pound and 65 per centum ad valorem.

It is asserted by the plaintiff that the collector erred in not deciding that both articles are "in part" of braid and otherwise answer the appropriate terms of paragraph 1529(a) of said act, and therefore are dutiable at 90 per centum ad valorem, relying upon *Alfred Kohlberg, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 354, C. A. D. 111, and *Akawo & Co., Inc.* v. *United States*, 6 Cust. Ct. 370, C. D. 498, in support of that contention.

We find no evidence in the record disclosing the method of manufacturing the bags and belts. Neither is there any direct evidence as to the method employed in producing the material from which the bags and belts were fabricated. However, plaintiff introduced a sample of merchandise which the evidence indicates is similar to the material appearing in the bags and belts. This was received in evidence as plaintiff's collective illustrative exhibit A, and will be hereinafter referred to as exhibit A.

In our opinion the articles in controversy are not in part of braid, either in fact or in law. Before stating our reasons for this conclusion, we shall briefly review the salient portions of the record.

Plaintiff's first witness, Michael J. Borab, a partner in the importing company, conceded that he had no knowledge of the method of producing the bags and belts in controversy, and the only practical value to be attributed to his testimony is the identification of samples of said bags and belts, which were received in evidence as exhibits 1 and 2, respectively.

Plaintiff's second witness, Abraham Rabinowitz, testified that he had been in the business of manufacturing and selling braids for about 20 years. It was through him that exhibit A was introduced in evidence, and he testified that it was made on a braiding machine and was known as a tubular braid. He explained that exhibit A was a looser "braid" and a little heavier than that appearing in exhibits 1 and 2, but that "it was made on the same machine," with a "core" on the inside of the "braid."

It is not clear from the record whether the core or filler is separately made, and the covering subsequently braided or woven around it; or whether the filler and the covering are produced simultaneously. When asked if the "material is woven around the inner core?" the

witness replied "The core goes on the inside of the braid," the implication being that the core was made first and then fed into the tubular braider to produce the covering. However, in view of the conclusion we have reached in this case, it would seem of little moment which order of production prevailed.

On cross-examination he testified that tubular braid is hollow, and that exhibit A is *not* hollow. Nevertheless, he insisted that exhibit A is tubular braid. He further testified that "we do not manufacture any cords"; that the only thing that is made on a braiding machine is a braid; and that cord is never made on a braiding machine. This latter statement is flatly contradicted by defendant's two witnesses, as will appear *infra*.

Defendant's first witness, Sigmund Heller, testified that he has been in the business of manufacturing braids and trimmings since 1931; that the material from which exhibits 1 and 2 were made "is a sort of cord made on a braiding machine"; that he has manufactured very similar material in his plant; and that it is rayon cord made on a braiding machine. With reference to the covering of the cord the witness said "the outside is definitely rayon braid." It is clear from his entire testimony, however, that what he apparently meant was that if it were by itself it would be a braid. "You couldn't call it tubular; tubular would have to be hollow. But it is made on a tubular braiding machine; it goes around and covers a filler." He testified that "in the trade we term a tubular braid something that is hollow, and it is round and hollow. * * *. If it has a filler we term it as a cord"; that defendant's illustrative exhibit B—

* * * is known in the trade as a sash cord, used on windows, and venetian blinds. It is also woven on a braiding machine, but it is a cord—a cord machine made by the New England Butt Machine Co. who manufacture machines of this type that make this cord. It is only known as a cord. The trade calls it sash cord.

Furthermore, that it is braided in the same fashion as the material which composes exhibits 1 and 2, and on the same type of machine. This directly refutes the testimony of plaintiff's witness Rabinowitz that the only thing made on a braiding machine is a braid.

Heller also testified that the samples in exhibit A are tubular cords, and continued as follows:

Judge KINCHELOE: It is your answer that a tubular braid is one that is hollow?
The WITNESS: Yes.
Judge KINCHELOE: And if it is filled up it is a cord?
The WITNESS: Yes, that is right.

The witness produced a sample of merchandise manufactured in his factory as a "tubular cord" containing a filler which he said was made on the same type of machine as was the material from which exhibits 1 and 2 were produced. The sample was marked in evidence

as defendant's collective illustrative exhibit D-1. He produced another sample of merchandise manufactured by his company described as a gimp cord edge, used by the United States Army to designate the color of the service, and known as a cord. He stated that "we have to make the cord and then make a flat braid which is sewed on to it, that goes on the soldier's overseas cap to designate the branch of service which he is in." This was received in evidence as defendant's collective illustrative exhibit D-2. It is likewise made on a braiding machine.

A third sample of cord manufactured by the witness, and similar to the material in exhibits 1 and 2, made on a braiding machine, was received in evidence as defendant's collective illustrative exhibit D-3.

The witness then testified that exhibits D-1, D-2, and D-3 contained fillers, and for that reason they are known as cords.

Defendant's second and last witness, A. W. Uellendahl, testified that he had been a braid manufacturer for about 35 years, and was familiar with the various types of machines which manufacture braids and cords; that the material of which exhibits 1 and 2 were made was a cord "because it has a filler; it is padded"; that a tubular braid is a hollow braid. When asked if exhibits 1 and 2 were composed of hollow braid, he answered "No, it is a filled; it is a padded braid, or a cord." He identified exhibit B as a sash cord or a venetian blind cord made on a tubular braider in about the same manner that the material in exhibits 1 and 2 was manufactured; that exhibit A was "another padded tubular, a cord" and was "known as a cord in the trade * * * because all cords are round and have a padding, whereas a tubular braid is flat"; that exhibit A was made by the same type of machine as that which manufactured the material in exhibits 1 and 2; that exhibit C is a twisted cord made on a "slide cord machine," and that there are two types of cord, one a twisted cord, and the other a braided cord. He identified collective illustrative exhibits E-1, E-2, and E-3 as different types of cord made on a braiding machine of the same type as that used to manufacture the material which composes exhibits 1 and 2. In response to questions by the court the witness testified as follows:

Judge KINCHELOE: What is your distinction between braid and cord, like that made in Exhibits 1 and 2?

The WITNESS: Whenever the cord is padded, your Honor, when the tubular braid is padded it is known as a cord, and if there is no padding, or no warp threads in the tubular, then it is a tubular, it is a flat tubular, such as they use for shoelaces or corset laces, and any of those items.

Judge KINCHELOE: In your judgment all braids are flat and the cord is solid?

The WITNESS: The moment it is padded it is a cord, known as a cord in the trade.

The witness was also shown a sample marked defendant's illustrative exhibit F for identification, which he described as a "cord edge

braid  *  *  *.  It has a cord on one edge and a braid, a flat braid on the other.  The flat braid is used to fasten the cord to the garment, or cap, or whatever it may be used for."  When asked by the court if it was woven simultaneously, he replied: "It is braided simultaneously." He described the flat part of the article as a braid, and the round part as a cord, because the latter contained a filler, and stated that the article was made on a braiding machine.

This is a striking description of a cord in part of braid, wherein the portion that constitutes the braid is used as a binding for the cord when attached to an article of wearing apparel.

The testimony of both of defendant's witnesses definitely refutes the testimony of plaintiff's witness Rabinowitz that braids only are made on braiding machines.

The weight of the evidence establishes that the material of which exhibits 1 and 2 are composed is a cord, and that it is in no part of braid, either in fact or in law.

As stated earlier in this opinion, plaintiff contends that the outer covering of the cord is in fact tubular braid; that if the cord is in part of braid it necessarily follows that the bags and belts made therefrom are articles in part of braid within the meaning of the statute.

The evidence when carefully analyzed does not sustain this conclusion.  While some of the witnesses referred to the braided portion of the cord represented by exhibit A as tubular braid, it is clear from an examination of the entire record that such portion could not possibly become tubular braid until after it has been removed or separated from the filler.  There is no suggestion that such a segregation is ever resorted to as a practical or commercial measure.  Indeed, it would be a reasonable assumption that it is never done, and we believe that the opinion may well be ventured that any such thought or design may not be attributed to the manufacturer of the cord.  What he apparently set out to make, and did in fact produce, was a cord, and it was merely incidental to that purpose that braiding was the process employed, from which the article doubtless acquired the name braided cord.  What is of the essence is that braid, as such, never appeared at any time in the construction of the cord.  The record fails to disclose that the cord was ever separated into its components—the filler and its covering.  On the contrary, it appears that as a result of manufacturing processes the two parts became permanently merged and integrated in the cord, and *ipso facto* braid, as such, was never created.  Hence, bags and belts made from such cord are not in fact in part of braid.  Even should we regard, in its literal implications, the testimony of the witnesses who characterized the covering of exhibit A as tubular braid, it would not necessarily foreclose the court from concluding as a matter of law that it was not braid within the commonly accepted meaning of the term.

The factual situation here is quite different from that presented in *Alfred Kohlberg, Inc.* v. *United States*, and *Akawo, Inc.* v. *United States, supra,* relied upon by plaintiff. It appears from the opinion of the court in the *Kohlberg* case that it was stipulated, and agreed between the parties that certain net gloves with lace cuffs, the entire product being made in one continuous operation, were gloves in part of lace. The cuffs were constructed as lace and served the purpose of lace. Consequently, the gloves were held to be properly classifiable as articles in part of lace within the intendment of said paragraph 1529 (a). On the other hand, it may not be said with the same propriety that the covering of the cord represented by exhibit A is braid, because it never was, nor will it ever become, braid, in any correct sense of the word. Moreover, it can never serve the purpose of braid. It logically follows, therefore, that the bags and belts are not in part of braid in the tariff sense.

The *Akawo* case, *supra,* while differing factually from the *Kohlberg* case, was decided upon the same legal principle, and therefore need not be discussed.

Our conclusion that the bags and belts are not in part of braid is fully supported by the reasoning of our appellate court in *United States* v. *Macy & Co.,* 7 Ct. Cust. Appls. 8, T. D. 36256.

It appears from the opinion of the court in the *Macy* case that the merchandise there under consideration was described on the invoice as "lead and cotton clo-clo *braids*"; that it was reported by the appraiser to consist of "dress trimming composed of a cotton *braid* wound around lead, the cotton *braid* chief value"; that it was returned for duty as a manufacture in chief value of *braid;* and that it was conceded in importer's brief to be an article *in part of braid.* Nevertheless, for reasons that will appear *infra* the court held that the article was not in part of braid within the meaning of paragraph 358 of the Tariff Act of 1913. [Italics supplied, except the word "infra."]

It further appears that the article had a linear core or center composed of flax cord on which were molded at regular intervals uniformly shaped pieces of lead; that the whole article was completely covered with so-called tubular cotton braid; and that lead was the component of chief value in the article.

After pointing out that the collector's assessment made in accordance with the advisory classification of the appraiser was sufficiently rebutted by the evidence showing that the article was not in chief value of braid, and that the correctness of the appraiser's report was further assailed in that it was clearly shown that the article was neither a trimming nor used as such, the court stated:

There remains, then, *for determination* the *precise issue* as to whether it can be said that the article is composed *in part of braid.* In order to declare that a thing is made in part of braid, it must appear that braid, *as that word is commonly under-*

*stood,* has been brought into existence and is one of the materials used in making the article under examination. [Italics supplied.]

To quote further from the opinion of the court:

The importers' concession would obviate a consideration of this question, but we are not disposed to accept the same, because it would place this court in the attitude of regarding as a braid something which *we do not think has ever attained that status, condition, or entity. * * *.* [Italics supplied.]

The court then discussed the common meaning of the term "braid," referred to several lexicographic definitions thereof, together with various judicial authorities on the subject, and expressed its views as follows:

The fact that the merchandise before us is referred to as a "clo-clo braid" does not, in view of the record, bring that article *within the common meaning of the word "braid"* as is in effect conceded by the Government, and we are unable to conclude that the entity braid *within the common meaning of the term* has ever existed or is found in the merchandise under consideration here. The nearest approach thereto is its covering, *and this is the basis of the Government's claim as to component material.* The appearance of the finished article shows that this covering was braided or woven upon the cord after the lead had been molded thereon. The covering, then, *never had the entity of braid;* it never had an independent, separate existence as an article or material; *it never was designed to be used for trimming, for ornamentation, or for binding;* it was never either a flat band or tape, *nor was it a tubular tape or braid.* Its first appearance was in the completed article before us, and it never had any other existence. [Italics supplied.]

It seems equally convincing to us that the entity braid, as that term is commonly employed, is not to be found in, nor has it ever existed in, the merchandise before us. Hence, the following language of the appellate court above quoted is a very precise and accurate description of the merchandise in this case:

* * *. The covering, then, never had the entity of braid; it never had an independent, separate existence as an article or material; it never was designed to be used for trimming, for ornamentation, or for binding; it was never either a flat band or tape, nor was it a tubular tape or braid. Its first appearance was in the completed article before us, and it never had any other existence.

We are not unmindful of the rule which prevailed at the time of the *Macy* decision, which required that an article to be made in part of braid, for instance, should have had a pre-existence as such. However, in determining that fact, the appellate court found that at no point of time was the article before it in part of braid. In this connection we quote further from the *Macy* opinion as follows:

Now, we think it is clear that the quoted part of paragraph 358 requires that an article to be made in whole or in part of braids thereunder must be made in whole or in part of something which has already attained a status or condition entitling it to be regarded as a braid in and of itself. *But neither the covering to the article before us nor any other part of it has ever attained that condition or status; neither has it attained the status or condition in which it could be used, nor is it designed to be used, for any of the purposes* to which braids are commonly devoted, namely, *for binding, for trimming, or for ornamentation.* [Italics supplied.]

The reasons which impelled the court to find that the so-called clo-clo braid was not in part of braid under the "pre-existence" rule were just as compelling to find that the article before it was not in part of braid under any other rule, in the absence of an established commercial meaning differing from the judicially approved common meaning of the term braid.

The accepted facts of the *Macy* case bear a striking analogy to the facts now before us, to the extent that in both instances the outer covering of the article was produced by a braiding process, and in both cases the covering practically served the same purpose.

In *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, 5, T. D. 43309, the court distinguished the *Macy* case, and in so doing quoted with evident approval the following significant language from its opinion in the latter case:

The covering, then, never had the entity of braid; it never had an independent, separate existence as an article or material; it never was designed to be used for trimming, for ornamentation, or for binding; it was never either a flat band or tape, nor was it a tubular tape or braid. Its first appearance was in the completed article before us, and it never had any other existence.

In *Swedish Venetian Blinds Co.* v. *United States*, 24 C. C. P. A. (Customs) 20, 25, T. D. 48291, our appellate court again had occasion to quote with approval from the *Macy* case as follows:

Now, we think it is clear that the quoted part of paragraph 358 requires that an article to be made in whole or in part of braids thereunder must be made in whole or in part of something which has already attained a status or condition entitling it to be regarded as a braid in and of itself. But neither the covering to the article before us nor any other part of it has ever attained that condition or status; neither has it attained the status or condition in which it could be used, nor is it designed to be used, for any of the purposes to which braids are commonly devoted, namely, for binding, for trimming, or for ornamentation.

While the court in the *Swedish Venetian Blinds Co.* case was primarily concerned with applying the "pre-existence" rule to a provision in the Tariff Act of 1930, nevertheless, it reveals express approval of its reasoning some 20 years earlier in the *Macy* case.

The language we have quoted at length from the *Macy* case leads unerringly to the conclusion that, upon the reasoning therein, the bags and belts in controversy are not in part of braid within the common meaning of that term, which must prevail in the absence of a different commercial meaning, and none is here claimed or proved.

For the reasons expressed herein the protest is overruled and the decision of the collector of customs is affirmed.

Judgment will be entered accordingly.

### DISSENTING OPINION

TILSON, Judge: Because of my strong conviction that my associates have fallen into error in both their reasoning and conclusion in this

case, I feel compelled to dissent therefrom. In view of the fairness with which the majority have detailed the testimony, no good purpose would be served by a reiteration of the same by me. I shall therefore refer only to such portions of the testimony as I feel require special emphasis.

As I understand the record, the method of producing the material of which the imported merchandise was made was in substance that a certain number of rather heavy yarns were introduced into a braiding machine. It appears that these yarns were introduced into the braiding machine through the bottom thereof, and are generally referred to as the core. Thereafter other finer or smaller yarns are introduced from spools which weave in and out in such a manner as to form the binding around the heavier yarns, known as the core.

There is no contention by anyone that these heavier yarns, known as the core, are braid, or that they are in any part of braid, but it is contended by the plaintiff that the outside covering is braid. There is no contention that the outside covering ever at any time had a separate existence as braid prior to its appearance in the finished material from which the imported bags and belts were made. In view of *Kohlberg* v. *United States*, 27 C. C. P. A. 354, decided March 20, 1940, it is immaterial whether or not this outside covering had a pre-existence.

Therefore, the question to be decided is whether or not this binding or covering is braid, and if so, whether or not this constitutes the imported merchandise an article in part of braid, as contemplated by paragraph 1529 of the act of 1930.

If our conclusion were dependent upon the testimony alone, in my opinion such testimony definitely establishes that such outside covering is braid. Both of plaintiff's witnesses, in effect, so testified. One of defendant's witnesses, on direct examination, definitely stated: "The outside is definitely rayon braid." The other witness for the defendant stated, in effect, that if there was a filler in the tubular braid then it was known as a cord, and that if there was no filler in the tubular braid, then it was known as a braid. When this witness was asked by Kincheloe, Judge: "What is your distinction between braid and cord, like that made in exhibits 1 and 2?" the witness replied:

Whenever the cord is padded, your Honor, when the tubular braid is padded it is known as a cord, and if there is no padding, or no warp threads in the tubular, then it is a tubular, it is a flat tubular, such as they use for shoelaces or corset laces, and any of those items.

The above quotation fully supports my views in this case. An examination of the sample in evidence shows that the outside covering or, as the witness denominated it, "tubular braid" is padded, or has inside thereof a core, and I concede that upon this record it must be held that this padded tubular braid is a cord. But I am also satisfied

that if there is no padding or warp threads in the tubular, then it is a tubular braid, as the witness stated. The mere fact that when the core is placed inside the tubular braid the two, thus combined, are then known as a cord does not destroy the braid covering or binding, nor does it serve to make the cord any the less a cord in part of braid. In view of the language "by whatever name known" the mere fact that it is known as a cord is immaterial.

In *United States* v. *Macksoud*, 27 C. C. P. A. 218, our appellate court made the following observation concerning the consideration to be given to testimony as to the common meaning of a given term:

With respect to the testimony in the case, it should be said that there has been no effort to establish a commercial designation of the term "straight hemstitching" different from the common meaning of the term. Of course, the rule is that where testimony relates to common meaning only it is not binding upon the courts, but there are situations in which it is proper to look to it in connection with the merchandise itself and in connection with the definitions of lexicographers and technical authorities. *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co., supra.* We think the instant controversy presents a situation of that character and, hence, have examined the testimonial record with great care.

See also *Absorbo Beer Pad Co.* v. *United States*, 30 C. C. P. A. 24.

Turning now to the dictionary definition of the term "braid" I quote the following from Funk & Wagnalls New Standard Dictionary, which was quoted by our appellate court in *United States* v. *Penn*, 27 C. C. P. A. 242:

braid, *n.* 1. A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them. * * *.

2. Anything braided, plaited, or interwoven, as a fillet, or plaited hair. * * *.

Webster's New International Dictionary, 1929, defines "braid" as:

2. To weave, interlace, or entwine together, as three or more strands or threads; to form into a braid; to plait.

* * * * * * *

6. A narrow fabric, as of wool, silk, linen, or strands of other material, variously used, as for binding, trimming, or other ornamentation, designs, outlines, etc., * * *.

The 1939 edition by the same authority defines "braid" as:

4. *A* narrow ribbon or *cordlike fabric* of wool, silk, linen, metallic thread, or the like, variously used as for binding, trimming, or other ornamentation, designs, outlines, and in lacework, crocheting, etc. [Italics mine.]

Funk & Wagnalls New Standard Dictionary, 1942, defines "braid" as:

1. To weave together by passing strands of alternately over and under each other; interlace; plait; give the appearance of a braid to, as, to *braid* the hair, or straw.

We have before us in this case for examination and consideration samples of the merchandise. With reference to the weight as evidence which should be given to samples alone, our appellate court, in *Waddell* v. *United States*, 3 Ct. Cust. Appls. 406, said:

* * *. It need hardly be observed that the presumption both of law and fact favors the correctness of the appraiser's finding and the collector's assessment. It is not intended here to imply that the court may not upon an inspection of the official sample alone set aside the classification of the collector. To the contrary the court would certainly be justified in that procedure in cases wherein the exercise of the senses and the application of common knowledge would sufficiently disclose an error in the assessment. * * *.

To the same effect was the holding of our appellate court in *Krusi* v. *United States*, 1 Ct. Cust. Appls. 168, from which the following is quoted:

* * *. When facts which determine the classification of imported merchandise are ascertainable and ascertained from an inspection of the goods themselves by the Board of General Appraisers, availing itself of the common knowledge and experience of which judicial notice may be taken, it can not be said that there is no evidence to support a finding of such facts. * * *. In this case an inspection of the goods, aided by nothing more than the facts of common knowledge and experience of which judicial notice may be taken, shows that they are appliqued, and the finding of the board to that effect was justified by the evidence which the goods themselves furnished.

The collector, the board, the court below, and this court are all equally entitled to avail themselves of such information as may be derived from an inspection of the articles in connection with the facts of common knowledge and experience, of which judicial notice may be taken. United States v. Strauss (136 Fed. Rep. 185).

The principle that in classification cases the sample is frequently a potent witness has been announced by our appellate court in *United States* v. *Bernard*, 18 C. C. P. A. 68; *United States* v. *Halle*, 20 C. C. P. A. 219; *United States* v. *Halle*, 20 C. C. P. A. 281; *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. 188; *United States* v. *May Department Stores*, 16 Ct. Cust. Appls. 353; *United States* v. *Gretsch*, 28 C. C. P. A. 26; *United States* v. *Field*, 18 C. C. P. A. 469.

An examination of the samples before us shows that the covering or binding of the material of which the bags and belts are composed is braided, interwoven, interlaced, intertwined together, as three or more strands or threads, that it is used for binding, that it is a cord-like fabric used for binding, and it is constructed by passing strands of thread alternately over and under each other in such a manner as to give it the appearance of braid.

While it is true that the above characteristics of the covering or binding do not respond to each and every detail of the definitions of braid quoted above they do definitely answer one or more of the requirements from each of the authorities set out above. This, coupled with the testimony to the effect that this binding or covering is definitely braid, demands a holding that this binding or covering is in fact braid.

The following is quoted from the majority opinion:

With reference to the covering of the cord the witness said "the outside is definitely rayon braid." It is clear from his entire testimony, however, that what he apparently meant was that if it were by itself it would be a braid.

It is my view that the above quotation goes to the very crux of this case. "If it were by itself it would be a braid." If it would be a braid if it were by itself, it is none the less a braid as it appears in· the imported merchandise. The mere fact that it is used as a binding for the core of the cord does not in any particular destroy its identity as a braid. If at any time during the production of the imported merchandise the entity braid was produced, and that braid was used in the manufacture of the imported merchandise without destroying its identity as braid, then the imported merchandise is an article in part of braid, whether it be known as a cord or otherwise. *Kohlberg* v. *United States, supra.*

In the case of *Penn* v. *United States*, 2 Cust. Ct. 295, C. D. 146, this court held the binding around imported mats to be braid. After quoting the above definition of "braid" from Funk & Wagnalls New Standard Dictionary, the court, speaking through Kincheloe, Judge, said:

That the said binding around the edges of the mats is braid within the above dictionary definition of the term we think is quite apparent from an inspection of said Exhibits 2 to 8. * * *.

In affirming this decision, our appellate court in *United States* v. *Penn*, 27 C. C. P. A. 242, said:

Appellant here contends that the plaited binding around the edges of the mats is not in fact a braid.

        *       *       *       *       *       *       *

We are convinced from the testimony in the record and an inspection of the samples in evidence that the binding upon the mats is braid within the common meaning of that term. * * *.

We are therefore in accord with the holding of the trial court that the involved mats are made in part of braid, within the meaning of that word as used in paragraph 1529 (a). * * *.

Having joined in the decision of this court in the *Penn* case, *supra*, wherein it was held that the binding around the edges of the mats was braid within the common meaning of that term based upon an inspection of the exhibits in that case, consistency compels me to the same view regarding the outside binding of the material used in the manufacture of the instant merchandise, in view of the change in the pre-existence rule announced in the *Kohlberg* case, *supra*.

Although the case of *United States* v. *Macy*, 7 Ct. Cust. Appls. 8, is not cited by counsel for either party in their briefs filed herein, the majority opinion appears to place great reliance upon that case in holding that the outside covering or binding in this case is not braid. In *Loewenthal* v. *United States*, 6 Ct. Cust. Appls. 209, which was prior to the *Macy* case, *supra*, in holding that for an article or fabric to be dutiable under paragraph 358 of the act of 1913, it must be in chief value of yarns, threads, or filaments, our appellate court used the following language:

We are therefore driven to the interpretation adopted, that the articles and fabrics within paragraph 358 must be in chief value of threads, yarns, or filaments, of which these goods are not; but, that being in chief value of beads, they fall for dutiable purposes within paragraph 353.

In deciding the *Macy* case, T. D. 35798, this court held:

\* \* \*. It has been held, however, that the provisions of paragraph 358 are limited to "articles in chief value of threads, yarns, and filaments." *Loewenthal & Co.* v. *United States* (6 Ct. Cust. Appls., 209; T.D. 35464).

The article before us is not composed in chief value of "yarns, threads, or filaments," but is composed in chief value of lead, and it follows that it is excluded from paragraph 358.

When the clear and definite holding in the *Loewenthal* case, *supra*, that only articles and fabrics in chief value of yarns, threads, or filaments were comprehended within the provisions of paragraph 358, is considered, and remembering also that in the *Macy* case, *supra*, not only this court, but also our appellate court, found and held that the articles in that case were not composed in chief value of yarns, threads, or filaments, but were composed in chief value of lead, it is clear to me that if ever a case was presented in customs jurisprudence in which it was unnecessary to construe the provisions of paragraph 358 and judicially define the term "braid," it is to be found in the decision of our appellate court in the *Macy* case, *supra*.

In *American Surety Co.* v. *United States*, 239 Fed. 680, the Circuit Court of Appeals, Fifth Circuit, referring to opinions expressed by the Supreme Court of the United States in certain cases, said:

Expressions found in the opinions in those cases cannot properly be given the effect of authoritative rulings on questions not involved in the particular cases respectively dealt with. Hardesty v. United States, 184 Fed. 269, 106 C. C. A. 411.

In view of the holding of our appellate court in the *Loewenthal* case; *supra*, that paragraph 358 embraced only fabrics and articles in chief value of yarns, threads, or filaments, the fact that it was definitely held in the *Macy* case, *supra*, that the merchandise therein was in chief value of lead, and not in chief value of yarns, threads, or filaments, and the quotation from the *American Surety Co.* case, *supra*, it appears to me that the expressions found in the opinion in the *Macy* case, *supra*, as to what constituted "braid," cannot properly be given the effect of authoritative rulings on that question. This view finds complete confirmation in the recent ruling of our appellate court in *Quong Yuen Shing* v. *United States*, 31 C. C. P. A. 43, C. A. D. 247, wherein the court refused to be bound by the rule of legislative approval of judicial construction upon the ground that certain statements contained in its previous decision were unnecessary to a decision in that case.

It has never been my view that the force and effect of a quotation from a given decision increases in proportion to the number of times

it is repeated. For the sole purpose of commenting thereon, I here quote the following from the *Macy* case, *supra*, which the majority opinion copies for the third time:

* * *. The covering, then, never had the entity of braid; it never had an independent, separate existence as an article or material; it never was designed to be used for trimming, for ornamentation, or for binding; it was never either a flat band or tape, nor was it a tubular tape or braid. Its first appearance was in the completed article before us, and it never had any other existence.

If the covering in the *Macy* case, *supra*, was not a braid, the reason therefor is clearly stated. It never had an independent separate existence as an article or material. Its first appearance was in the completed imported article, and it never had any other existence. I have no quarrel with the pre-existence rule announced in the *Macy* case, and have endeavoured to follow it wherever applicable, but since the *Kohlberg* decision that rule has had no application to the provisions of paragraph 1529. Therefore, if, in the present case, the covering or binding is a braid if the core were removed, it is just as much a braid with the core inserted, and the fact that it never had a pre-existence as braid is here entirely immaterial.

I agree with the majority that the above quotation from the *Macy* case "is a very precise and accurate description of the merchandise in this case," and if the provision we are here called upon to construe were the same or even similar to that involved in the *Macy* case, I would without hesitation follow here, as I have for many years, the rule announced in the above quotation from the *Macy* case, but, as heretofore stated, the law has been so changed that that rule no longer has any application.

It is true, as stated by the majority, that the rule announced in the above quotation from the *Macy* case has been quoted with evident approval by our appellate court in numerous cases, but in each of such cases the issue turned upon the pre-existence rule announced in the *Macy* case, and it was quite proper to cite, as supporting authority, the above quotation from the *Macy* case. However, the majority opinion fails to cite a single case as supporting its conclusion or reasoning in which the quotation from the *Macy* case is cited with "evident approval" where the pre-existence rule was not involved, and controlled the issue.

In *United States* v. *Field*, 17 C. C. P. A. 1, our appellate court said:

In *United States* v. *Macy*, *supra*, certain "clo-clo braids" were involved. *These were dress trimmings.* The court found that each article was composed of a cord having pieces of lead thereon at regular intervals and that the covering was braided or woven upon the cord after the lead had been molded thereon. The court then observed: * * *. [Italics mine.]

Then follows the quotation from the *Macy* case hereinabove set out. If, as stated in the *Field* case, *supra*, referring to the clo-clo

braids in the *Macy* case, "These were dress trimmings," then it would appear that the covering or binding on the cords in the *Macy* case should have been held to be braid. This only goes to emphasize the point heretofore made that, since it was established and accepted that the merchandise in the *Macy* case was in chief value of lead, and in view of the holding in the *Loewenthal* case, *supra*, that paragraph 358 comprehended only articles and fabrics in chief value of yarns, threads, or filaments, any attempt in the *Macy* case to define braid was unnecessary to a decision of that case.

In *Swedish Venetian Blinds Co.* v. *United States*, 24 C. C. P. A. 20, the court was construing the provision in paragraph 912 of the act of 1930 for "Fabrics, with fast edges, not exceeding twelve inches in width, and articles *made* therefrom; * * *." [Italics mine.] There, of course, the pre-existence rule was brought into issue, and it was entirely proper for the court to cite as supporting authority the pre-existence rule announced in the *Macy* case, and to quote therefrom, which it did. I fail to find anything in the *Swedish Venetian Blinds Co.* case, *supra*, that lends any support whatever to the conclusion and reasoning of the majority opinion herein.

But even if we were to accept the definition of a braid given in the *Macy* case, *supra*, as an authoritative ruling on that question, that is no answer to the question of whether or not the outside covering or binding here in question is a braid. In the case of *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, our appellate court laid down a very definite rule as to what constituted a machine, and yet in *United States* v. *Associated Mfg. Co.*, 30 C. C. P. A. 236, we find the following:

> It has been held many times by this court that that definition, while correctly defining the term "machine," is a very broad one and it never was intended to mean that every mechanical contrivance which utilizes or applies or modifies energy or force or for the transmission of motion must be considered in a tariff sense a machine. * * *.

Referring to the definition of a braid in the *Macy* case, *supra*, it is my opinion that that definition, while correctly defining the term "braid," never was intended to mean that *only* "A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them" was braid. Conversely stated, that definition never meant to hold that anything that was not "A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them" was not a braid. One of the requirements for a braid set out in the *Macy* case, *supra*, was that it be designed to be used for binding. To that extent the binding or covering herein fits squarely into that definition, since this binding or covering was designed to be used exclusively for binding the so-called core of the cord.

In my opinion the record in this case, considered in connection with the authorities hereinbefore cited, requires a holding that the

outside binding or covering on the merchandise in this case is braid within the common meaning of that term. This being true, it logically follows that under the *Kohlberg* decision, *supra*, the imported merchandise is dutiable under paragraph 1529 as articles in part of braid, by whatever name known and to whatever use applied, and whether or not provided for elsewhere in this act, although the braid never had a pre-existence, but was produced simultaneously with the production of the cord of which it forms a part. The following is quoted from the *Kohlberg* case:

\* \* \*. It is our view that Congress never intended that the provision "articles \* \* \* in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a pre-existing component material, and the language of the provision, we think, clearly implies that a thing may be a part of the article referred to even though the part was produced in connection with the production of the article itself. \* \* \*.

Referring to the covering or binding in this case, the majority opinion states:

\* \* \* it is clear from an examination of the entire record that such portion could not possibly become tubular braid until after it has been removed or separated from the filler. \* \* \*.

As I understand the above quotation, it amounts practically to an admission that if the braided portion of the cord were removed or separated from the filler the majority would consider and hold such portion to be braid. If the binding or covering would be a braid under the above conditions, then the imported merchandise answers all the requirements of paragraph 1529 and falls squarely within the provision for "\* \* \* braids \* \* \* and fabrics and articles wholly or in part thereof, finished or unfinished, \* \* \* by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act \* \* \* ." It is absolutely immaterial whether such a segregation is ever resorted to or not as a practical or commercial proposition, or whether or not such a segregation was ever made.

I readily concede that what the manufacturer set out to make, and did in fact produce, was a cord, but there is nothing in this record to show that the production of the braid binding for that cord was merely incidental to that purpose. I also readily subscribe to the statement that the core or filler and its covering or binding are the result of manufacturing processes, and that these two parts become permanently merged and integrated and that the resultant product is a cord, but I do not subscribe to the proposition that "*ipso facto* braid, as such, was never created." In the *Kohlberg* case, *supra*, the gloves were never separated into their components— the hand portion and the cuff portion. On the contrary, it appears that as a result of manufacturing processes the two parts became

permanently merged and integrated in the gloves, but neither this court, in which one of my present associates joined, nor our appellate court, held that *ipso facto* lace, as such, was never created. On the contrary, our appellate court held that it was never the intention of the Congress that the provision "articles * * * in part thereof" should be so construed as to make it subject to the pre-existence rule announced in the *Macy* case.

The observations hereinbefore made with reference to the definition of a machine in the *Simon, Buhler* case, *supra*, find complete confirmation in *United States* v. *Guth Stern*, 21 C. C. P. A. 246, as follows:

A careful analysis of this court's opinion in the *Simon, Buhler & Baumann* case, *supra*, will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

    \*       \*       \*       \*       \*       \*       \*

However, it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it. An examination of numerous definitions given in the very authorities cited in the *Simon, Buhler & Baumann* case, *supra*, discloses distinctions which should be taken as matters of common knowledge. * * *.

In my opinion, a careful analysis of our appellate court's opinion in the *Macy* case, *supra*, will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "braid" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a braid as that term and certain associated terms are defined in the standard authorities there cited. It is likewise my opinion that it was never the intention of our appellate court to hold arbitrarily that the definition is so rigid and exact in its terms as to exclude any and all fabrics and articles that may happen not to be literally embraced within it.

For the reasons hereinbefore stated and following the cited authorities it is my firm conviction that the covering or binding on the cord from which the imported bags and belts were made, is braid, and therefore dutiable as articles in part of braid under paragraph 1529 of the act of 1930. I, therefore, dissent from the reasoning and conclusion reached by my associates.